*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 19-20026-E-13 |
| | Docket Control No. NLG-3 |
| THOMAS JAMES IVERS, | |
| Debtor. | |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

### MEMORANDUM OPINION AND DECISION
### ORDER VACATING IN PART ORDER FOR RELIEF FROM STAY

This Chapter 13 case was commenced on January 3, 2019, by Thomas Ivers, the Debtor. Mr. Ivers was represented by counsel. On its face, this was a "simple" Chapter 13 case. However, as experienced bankruptcy practitioners have learned, looks can be deceiving.

In the (overly) detailed discussion below, the court reviews this Bankruptcy Case, the conduct of the Debtor, and the court's renewed concern that the Debtor may not be legally competent in these federal court proceedings. If not competent, then it will be necessary for the appointment of a personal representative, conservator, or other person to ensure that his rights and interests are competently presented.

The court, by separate Decision and Order, has referred the question of Mr. Ivers legal competency to the Sacramento County Adult Protective Services for investigation, review, reporting to this court, and action (to the extent Adult Protective Services determines that Debtor suffers from a legal incompetency).

Because it is reported that Provident Funding Associates, L.P. has pending a nonjudicial foreclosure sale for November 15, 2019, and the apparent lack of Debtor's ability to protect what appears to be at least $45,000.00 of value in the property for his daughter, Jamie Ivers, who is stated to have a $30,000.00 claim secured by the property that is the subject of pending foreclosure sale, the court has determined that reasons exist to vacate that portion of the prior order for relief from the stay allowing for the non-judicial foreclosure sale to be conduct.

**DISCUSSION**

Mr. Ivers obtained his Chapter 7 discharge on December 13, 2018, in his 2018 bankruptcy case, No. 18-25616, filed in this District. This Chapter 13 case was filed on January 3, 2019, just twenty-one days later. As shown by the Debtor's schedules, he has no monies with which to fund a Chapter 13 Plan. Schedules I (income of $1,442.00 a month) and J (expenses of $1,308.00 a month, which does not include any rent or mortgage payment). Dckt. 1 at 25-28.

From day one of this case Mr. Ivers' "plan" was clear, he needed to sell his current residence property ("Property") and try and save the equity he asserted existed in the Property. In his proposed Chapter 13 Plan, he proposed making $100.00 a month payments, which would be used only to pay his attorney, and no creditors would be paid, except in the seventh month of the plan the two mortgage lenders with deeds of trust against the Property, which totaled by Mr. Ivers calculation ($379,262.00), and a third obligation of ($30,000.00) secured by the Property that is owed to his daughter, Jamie Ivers. Plan, Dckt. 2.

The Chapter 13 Plan caught the objections of the Chapter 13 Trustee and creditors Provident Funding Associates, L.P. ("Provident") and Citibank, N.A. (Citibank), the two mortgage creditors. Dckts. 16, 24, 28. These objections were sustained. Civil Minutes and Orders, Dckts. 31, 32, 33, 34, 35, 36. The court addressed in the Civil Minutes the problems with a Chapter 13 plan which merely says, "everyone just wait seven months, something will be sold."

Mr. Ivers came back with an Amended Plan and Motion to Confirm. Dckts. 42, 40. Again, oppositions were presented by the Chapter 13 Trustee, Provident, and Citibank. The hearing on the Motion to Confirm was continued to allow the Debtor and creditors to meet and confer to work out an organized, orderly marketing and sale of the Property. Civil Minutes for May 7, 2019 hearing,

2

Dckt. 61.  As discussed by the court, the Debtor's "plan" in the Amended Chapter 13 Plan did not appear be one that was commercially reasonable for the marketing and sale of the Property which Debtor asserts has a value of $608,000.00 (see Schedule A/B, Dckt. 1 at 11).

The court concluded that the Debtor appeared unable to deal with the actual marketing and sale of the Property and the process of the appointment of a limited purpose representative for the marketing and sale of the Property to salvage the asserted $198,735.00 equity in the Property for Debtor in excess of the secured claims.  Schedule D, Dckt. 1 at 19-20.

The court ultimately entered in August 2019, an order appointing a Limited Scope Personal Representative for the marketing and sale of the Property.  Civil Minutes and Order, Dckts. 95, 96.  The court understood this to be with the concurrence of the Debtor, as well as the agreed process between Debtor and the mortgage creditors.  The court also granted in August 2019, the Motion for Relief From the Stay for Provident, with the order not being effective until November 1, 2019, and not waiving the fourteen day stay of enforcement of the relief, to allow it to proceed with a foreclosure sale on the Property.  Order, Dckt. 94.  This was granted in light of the Limited Scope Representative having been appointed and working to sell the property.

On September 17, 2019, a Motion to Sell the Property was filed.  Dckt. 100.  The sales price was stated to be $520,000.00, which is less than the $608,000.00 stated by the Debtor.  It is not unusual that a sales price may be less than what a debtor believed it to be worth.  On the other hand, this court has conducted hearings for the sale of property at which multiple bidders show up and the ultimate sales price is well in excess of what a debtor may have originally thought.

With the filing of the Motion, the heavens fell in on this case.  Debtor, in *pro se*, filed a five page document on October 1, 2019, the day of the hearing, asserting that there was a conspiracy to default being committed to deprive him of the value of the Property.  He alleges that his attorneys are involved in the conspiracy, as well as the Limited Scope Representative.  Dckt. 111.  The court denied without prejudice the Motion to Sell in light of the contentions by Debtor of the alleged conspiracy to defraud.

Debtor then, three days later, filed a thirty-nine (39) page document (including thirty-two pages of exhibits)  going into further argument about the Motion to Sell, who was doing Debtor

wrong. This was all for a Motion that was no longer before the court.

On October 8, 2019, Debtor's counsel filed a Motion to Withdraw in light of the assertions by Debtor on the conspiracy to default and assertions made against counsel. Motion, Dckt. 119. The court issued an order continuing the hearing one week and ordered the Debtor, his attorneys, and the Limited Scope Representative to appear in person at the continued hearing. Dckt. 123.

In the Order Continuing the Hearing, the court reviews the Bankruptcy Case, the ineffective prosecution by Debtor, and the issue of whether Debtor is legally competent to be a party or whether a representative (under Fed. R. Civ. P. 17, 25 and Fed. R. Bankr. P 7017, 7025, 9014,1016) needed to be appointed.

All persons ordered to do so appeared at the continued hearing on October 29, 2019. The court engaged in a long discussion with the Debtor. The court recounts the discussion in the Civil Minutes for the October 29, 2019 hearing, and that the Debtor convinced the court that he was sufficiently competent to proceed in the Bankruptcy Case. As discussed at the hearing, Debtor has severed as a consultant to what was a major law firm in Sacramento, had extensive experience, has his daughter as a creditor who has a financial stake in the orderly sale of the Property, and that Debtor appeared to understand: (1) the need to immediately obtain counsel, (2) the need to immediately contact his daughter (which whom he expressed having a good relationship), (3) the need to immediately address the pending foreclosure sale, and (4) the need to immediately move forward to protect the value in the property for his daughter on her secured claim and any equity that would exist for the Debtor. Civil Minutes, Dckt. 127.

At the conclusion of the hearing the court believed that the Debtor understood the need to move forward and not merely argue why he believes he was done wrong in the past. The court granted the Motion to Withdraw, the attorney-client relationship clearly ruptured beyond repair. The Order authorizing the withdrawal of counsel was filed on October 30, 2019.

The court had the Order and Civil Minutes served not only on the Debtor but his daughter, Jamie Ivers. Order and Certificate of Service, Dckts. 129, 130.

///

///

4

**ACTION BY DEBTOR AND HIS DAUGHTER SINCE OCTOBER 30, 2019**
**AND**
**ISSUE OF DEBTOR'S LEGAL COMPETENCY**

A review of the file in this Bankruptcy Case on November 6, 2019, does not reflect that Debtor has obtained counsel, that his daughter has obtained counsel, or that any action is being taken by Debtor or his daughter to protect their respective financial interests in the Property.

However, a review of the file does reflect non-protective, rear looking action by Debtor. On October 31, 2019, Debtor filed a California form "Notice of Motion and Order Continuing [Hearing or Trial, check the box form]. There was no motion pending to which this relates. As discussed in the order issued pursuant thereto, it appears that this was a request for continuance of the foreclosure sale (which is reported to be set for November 15, 2019, Dckt. 136) or for the court to issue injunctive relief to stay the foreclosure sale. Order, Dckt. 134. The court's Order addresses how and why such relief is not granted by the request in the State Court Motion Continuance Form.

Then, on November 4, 2019, Debtor filed a seventy-four (74) page document, arguing further as to why and how he has been wronged by his former attorneys and the Limited Scope Representative. Nothing in this indicates any action being taken by Debtor to obtain counsel, to coordinate with his daughter, and any action being taken to protect their demonstrated financial interests in the Property.[1] In this backward looking document, Debtor painstakingly goes through phone records arguing why it shows that his former counsel did not communicate with him. There is nothing about what Debtor and his daughter are doing to protect their financial interests.

**Apparent Lack of Legal Competency**[2]

As a basic requirement for a person to have his or her rights determined in federal court, that person must meet the basic requirements for legal competency. Moore's Federal Practice, Civil § 17.21, provides a good survey of the federal competency requirement.

---

[1] Even for what Debtor asserted was the unreasonably low sale price for the contract advanced by the Limited Scope Representative, Daughter's ($30,000) secured claim would be paid in full and there would be $15,000 of sales proceeds for Debtor.

[2] The court provides this overly detailed review of the applicable federal law and the apparent applicable California law in light of this type of determination being rare in federal bankruptcy courts.

§ 17.21 Capacity of Individual Litigant Acting on Its Own Behalf Determined by Law of Domicile

[1] Domicile Tested at Time of Filing

The capacity of an individual engaged in litigation to enforce its own right, not acting as a representative of another, is determined by the law of the litigant's domicile...

[3] Persons Lacking Legal Capacity Must Have Adequate Representation

[a] Court May Appoint Guardian

Although persons lacking legal capacity may not sue or be sued, Rule 17(c) provides that their interests may be represented in litigation in federal courts (see also § 17.10[3][c] (guardian's and guardian ad litem's real party in interest status); § 17.22 (capacity of representatives of persons lacking legal capacity)). If a minor or other incompetent person has a representative appointed by law, such as a guardian, committee, conservator, or other similar fiduciary, this representative may sue or defend on behalf of the minor or incompetent person. A minor or incompetent who has no duly appointed representative may sue by a next friend or by a guardian ad litem. If a minor or incompetent is sued and is not represented in the action, the court must appoint a guardian ad litem or make some other proper order to protect the minor or incompetent. Similarly, if a party becomes incompetent during the course of the litigation, the court must appoint a guardian ad litem or make some other proper order. The language of the rule is mandatory and requires the court to appoint a guardian ad litem or make some other provision once the court determines that the individual is incompetent. However, the rule does not place an affirmative obligation on the district court to inquire *sua sponte* into the individual's capacity unless evidence showing that the individual has been adjudged incompetent or other clear evidence of incompetence is brought to the district court's attention. Bizarre behavior alone is insufficient to trigger a mandatory inquiry into a litigant's competency.

The function of the representative or guardian ad litem is to make decisions concerning the litigation on behalf of the minor or incompetent person, and not necessarily to represent the person as an attorney. [With limited parent child exceptions.]...

If a general guardian fails or refuses to sue or defend in a particular case, or if there is a conflict of interest between the minor or incompetent person and the guardian or next friend, federal courts may appoint a guardian or attorney ad litem to protect the interest of the represented party in the case.

To determine whether an individual is considered a minor or incompetent person, Rule 17(c) must be read in conjunction with Rule 17(b). Under Rule 17(b)(1), the capacity of an individual to sue or be sued is determined by the law of the individual's domicile. Once the court applies the law of the individual's domicile and determines that the individual is underage or is otherwise incompetent, the provisions of Rule 17(c) come into play. If the minor or incompetent already has a general guardian, conservator, or like fiduciary, that representative may sue or defend on behalf of the minor or incompetent. Whether an individual or entity is the type of fiduciary that has

the legal authority to represent the minor or incompetent person is also determined according to state law. If the minor or incompetent has no such representative, the court must appoint a guardian ad litem or make some other provision for the protection of the individual. At this stage in the process, the court is not guided by state law but rather should be guided by the protection of the individual's interests. The court is not required to follow procedures set out by state law to determine incompetency, but may follow whatever procedures are appropriate within the bounds of due process.

[b] Protective Measures Implemented at Court's Discretion

The directive that courts protect the interests of persons lacking legal capacity is not tantamount to a requirement that courts appoint a representative. Rather, when the court finds that a litigant lacks legal capacity, the court may either appoint a guardian *ad litem* "or issue another appropriate order ... to protect a minor or incompetent person who is unrepresented in an action." The necessity of a guardian is determined at the court's discretion. The court need only inquire whether the incompetent's interests are adequately protected.

Some of the authorities cited by Moores in the section above include the following cases.

_Gibbs v. Carnival Cruise Lines_, 314 F.3d 125, 134-135 (3rd. Cir. 2002).

"While the New Jersey Court Rule is relevant to our inquiry and will be discussed further in the next section, we do not begin our analysis with this Court Rule. Instead, we must look to Federal Rule of Civil Procedure 17, which explains the capacity of a party to sue or be sued, and may therefore be used to determine how a person is appointed a "legal representative" within the meaning of § 183b(c). We apply the Federal Rules instead of the New Jersey Court Rules because state rules regarding the appointment of guardians ad litem are procedural and therefore do not apply, in the first instance, to cases brought in federal courts. See *M.S. v. Wermers*, 557 F.2d 170, 174 n.4 (8th Cir. 1977); 6A C. Wright & A. Miller, Federal Practice and Procedure § 1571, at 511-12 (1991); see generally *Hanna v. Plumer*, 380 U.S. 460, 471-72, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965) (federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices).

_United States v. Mandycz_, 447 F.3d 951, 962 (6th Cir. 2006).

So while the commencement of a civil case does not suspend the Due Process Clause, it does alter the fairness requirements of the Clause. Whereas due process protects incompetent criminal defendants by imposing an outright prohibition on trial, it protects incompetent civil parties by requiring the court to appoint guardians to protect their interests and by judicially ensuring that the guardians protect those interests. See Fed. R. Civ. P. 17(c) ("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."); see also *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) ('[T]he district judge should be aware that due process considerations attend an incompetency finding and the subsequent appointment of a guardian ad litem.'); *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1309 (11th Cir. 2001), vacated on other grounds, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002)*; Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 652 (2d Cir. 1999); *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989)*; Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979). Independent of the court's duty to appoint a

guardian to look after his interests, Mandycz of course also is entitled to the other basic protections of due process in a civil setting. See *United States v. Kairys*, 782 F.2d 1374, 1384 (7th Cir. 1986) ('[B]ecause denaturalization is civil and equitable in nature, due process [is] satisfied by a fair trial before an impartial decisionmaker. [concluding that there is no right to jury trial for denaturalization proceeding]')."

*Berrios v. N.Y. City Housing Authority*, 564 F.3d 130, 134 (2nd Cir. 2009).

"A minor or incompetent person normally lacks the capacity to bring suit for himself. See, e.g., N.Y. C.P.L.R. 1201 (McKinney 1997); Fed. R. Civ. P. 17(b)(1) (capacity of an individual claim owner to sue is determined by "the law of the individual's domicile"). Rule 17(c) provides that a minor or incompetent person may be represented by a general guardian, a committee, a conservator, or a similar fiduciary, see Fed. R. Civ. P. 17(c)(1), and that

'[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action,'

Fed. R. Civ. P. 17(c)(2) (emphasis added). Thus, as to a claim on behalf of an unrepresented minor or incompetent person, the court is not to reach the merits without appointing a suitable representative.
...
On remand, the district court should first determine whether Berrios is a suitable guardian *ad litem* for Travieso. If it finds that he is not suitable and that it is not clear that a substantial claim could not be asserted on Travieso's behalf, the court should appoint another person to be Travieso's guardian *ad litem*. If the court either finds that Berrios is a suitable guardian or if it appoints a suitable guardian who is a non-attorney, it should not dismiss the action without affording such guardian the opportunity to retain counsel or to seek representation from a pro bono attorney or agency. If the guardian secures an attorney or is an attorney, the court should not dismiss the complaint for failure to state a claim without giving counsel an opportunity to file an amended complaint. If the guardian is not an attorney and does not obtain counsel, and if it is not clear to the court whether a substantial claim might be asserted on Travieso's behalf, the court should decide whether to appoint counsel, taking into "consider[ation] the fact that, without appointment of counsel, the case will not go forward at all," *Wenger*, 146 F.3d at 125. If counsel is not secured or appointed, the court may dismiss the complaint, but without prejudice."

*Sam M. v. Carcieri*, 608 F.3d 77, 85-86 (1st Cir. 2010).

Rule 17(c) of the Federal Rules of Civil Procedure governs a minor or incompetent's access to federal court. It directs that a minor or incompetent may sue in federal court through a duly appointed representative which includes a general guardian, committee, conservator, or like fiduciary. Fed. R. Civ. P. 17(c)(1). If a minor lacks a general guardian or a duly appointed representative, Rule 17(c)(2) directs the court either appoint a legal guardian or Next Friend, or issue an order to protect a minor or incompetent who is unrepresented in the federal suit. Fed. R. Civ. P. 17(c)(2).

The appointment of a Next Friend or guardian ad litem is not mandatory. Thus, where a minor or incompetent is represented by a general guardian or a duly appointed representative, a Next Friend need not be appointed. See *Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281 (1st Cir. 1982) (declining

to appoint Next Friend where plaintiffs had general guardians or duly appointed guardians who opposed the federal suit); *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989)(holding that a minor's mother lacked authority to proceed as Next Friend in federal suit where the federal court had appointed a guardian ad litem to represent the child). However, Rule 17(c) 'gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent.' *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989); *Melton*, 689 F.2d at 285 (stating  that Rule 17(c) allows federal courts to appoint a Next Friend or guardian ad litem where there is a conflict of interest between the minor and her general representative).

The minor's best interests are of paramount importance in deciding whether a Next Friend should be appointed, but the ultimate 'decision as to whether or not to appoint [a Next Friend or guardian ad litem] rests with the sound discretion of the district court and will not be disturbed unless there has been an abuse of its authority. *Melton*, 689 F.2d at 285. See also *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 66 (1st Cir. 2008)."

## Garrick v. Weaver, 888 F.2d 687, (10th Cir. 1989).

Rule 17(c) flows from the general duty of the court to protect the interests of infants and incompetents in cases before the court. See *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978); *Noe v. True*, 507 F.2d 9, 11-12 (6th Cir. 1974).  Garrick through her attorney requested the appointment of the guardian ad litem because her interests might be adverse to her children's interests as they were each claimants to the same finite fund.  When the court determines that the interests of the infant and the infant's legal representative diverge, appointment of a guardian *ad litem* is appropriate.  *Noe*, 507 F.2d at 11-12.  Once appointed, the guardian *ad litem* is 'a representative of the court to act for the minor in the cause, with authority to engage counsel, file suit, and to prosecute, control and direct the litigation.' *Id.* at 12. We hold that a guardian ad litem sufficiently meets the "other fiduciary" requirement of Rule 17(c) so as to deprive Garrick of standing to represent her children in the same action for which the guardian ad litem was appointed. Garrick's standing to represent her minor children in other actions remains unaffected."

## Dacannay v. Mendoza, 573 F.2d 1075, 1079 (9th Cir. 1978).

"It is an ancient precept of Anglo-American jurisprudence that infant and other incompetent parties are wards of any court called upon to measure and weigh their interests.  The guardian *ad litem* is but an officer of the court.  *Cole v. Superior Court*, 63 Cal. 86, 89 (1883); *Serway v. Galentine*, 75 Cal. App. 2d 86, 170 P.2d 32 (1940). While the infant sues or is defended by a guardian *ad litem* or next friend, every step in the proceeding occurs under the aegis of the court. See generally Solender, Guardian *Ad Litem*: A Valuable Representative or an Illusory Safeguard, 7 Tex.Tech.L.Rev. 619 (1976); Note, Guardians *Ad Litem*, 45 Iowa L. Rev. 376 (1960)."

## Robidoux v. Rosengren, 638 F.3d 1177, (9th Cir. 2011).

"District courts have a special duty,  derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors. Rule 17(c) provides, in relevant part, that a district court 'must appoint a guardian *ad litem*— or issue another appropriate order—to protect a minor or incompetent person who is

unrepresented in an action.' Fed. R. Civ. P. 17(c). In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.' *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978); see also *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that 'a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*')."

*Scannavino v. Florida Department of Corrections*, 242 F.R.D. 622, 664, 666-667 (M.D. Fla. 2007).

"Although under Rule 17(b) a district court determining a party's capacity must use the law of that party's domicile, the court need not adopt any procedure required by state law but must only satisfy the requirements of due process. *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1296 (11th Cir. 1999) (explaining that "if the state law conflicts with a federal procedural rule, then the state law is procedural for *Erie/Hanna* purposes regardless of how it may be characterized for other purposes."); *Thomas*, 916 F.2d at 1035 ('[W]e reject the notion that in determining whether a person is competent to sue in federal court a federal judge must use the state's procedures for determining competency or capacity.'). In the absence of a clear test for determining a party's incapacity or incompetence under Florida law, 'a federal procedure better preserves the integrity and the interests of the federal courts.' *Id.* at 1035.

'It is a well-understood tenant of law that all persons are presumed to be competent' and that the 'burden of proof of incompetency rests with the party asserting it.' *Weeks v. Jones*, 52 F.3d 1559, 1569 (11th Cir. 1995). Because '[a] person may be competent to make some decisions but not others,' the test of a party's competency 'varies from one context to another.' *United States v. Charters*, 829 F.2d 479, 495 n.23 (4th Cir. 1987). In general, "to be considered competent an individual must be able to comprehend the nature of the particular conduct in question and to understand its quality and consequences." *Id.* (quoting B. Freedman, Competence, Marginal and Otherwise: Concepts and Ethics, 4 Int'l. J. of L. & Psychiatry 53, 56 (1981)). In the context of federal civil litigation, the relevant inquiry is whether the litigant is 'mentally competent to understand the nature and effect of the litigation she has instituted.' *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971); *Donnelly v. Parker*, 158 U.S. App. D.C. 335, 486 F.2d 402, 407 (D.C. Cir. 1973) (stating that Rule 17(c) may require an inquiry into the plaintiff's 'capacity to understand the meaning and effect of the litigation being prosecuted in her name').
...
The rights of an incompetent litigant in a federal civil proceeding are protected by Rule 17(c), Federal Rules of Civil Procedure, which provides that a district court "shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed. R. Civ. P. 17(c). An incompetent litigant is "not otherwise represented" under Rule 17(c) if she has no "general guardian, committee, conservator, or other like fiduciary." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 656 (2d Cir. 1999). The parties stipulated at the competency hearing that the plaintiff lacks a general guardian and is not otherwise represented within the meaning of Rule 17(c).

The decision to appoint a "next friend" or guardian ad litem rests with the sound discretion of the district court and will be disturbed only for an abuse of discretion. *In re Kloian*, 179 Fed. Appx. 262, 265 (6th Cir. 2006) (quoting *Gardner v. Parson*,

874 F.2d 131, 140 (3d Cir. 1989)). Unlike a determination of competency, a district court's decision whether to appoint a guardian ad litem is purely procedural and wholly uninformed by state law. *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135-36 (3d Cir. 2002) ('A district court need not look at the state law, however, in determining what factors or procedures to use when appointing the guardian *ad litem*.'); Burke v. Smith, 252 F.3d 1260, 1264 (11th Cir. 2001) ('It is well settled that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c).').

...

Under Rule 17(c), a district court must appoint a guardian ad litem if it receives 'verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent.' *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003). An exhaustive review of the record, as well as the evidence adduced at the competency hearing (and other evidence properly before the court), commends the appointment of a guardian ad litem to protect the plaintiff's interests in this case. Indeed, failure to appoint a guardian ad litem undermines the plaintiff's interests and would default both the court's obligation under Rule 17(c) and the requirements of justice."

In considering this question in light of applicable California law, the court notes the following California statutory provisions:

## Due Process in Competence Determinations Act (Cal. Prob. Code § § 810 et seq.)

§ 810.  Legislative findings and declarations regarding legal capacity

(a) For purposes of this part, there shall exist a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions.

(b) A person who has a mental or physical disorder may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions.

(c) A judicial determination that a person is totally without understanding, or is of unsound mind, or suffers from one or more mental deficits so substantial that, under the circumstances, the person should be deemed to lack the legal capacity to perform a specific act, should be based on evidence of a deficit in one or more of the person's mental functions rather than on a diagnosis of a person's mental or physical disorder.

§ 811.  Unsound mind or incapacity

(a) A determination that a person is of unsound mind or lacks the capacity to make a decision or do a certain act, including, but not limited to, the incapacity to contract, to make a conveyance, to marry, to make medical decisions, to execute wills, or to execute trusts, shall be supported by evidence of a deficit in at least one of the following mental functions, subject to subdivision (b), and evidence of a correlation between the deficit or deficits and the decision or acts in question:

(1) Alertness and attention, including, but not limited to, the following:

(A) Level of arousal or consciousness.

(B) Orientation to time, place, person, and situation.

(C) Ability to attend and concentrate.

(2) Information processing, including, but not limited to, the following:

(A) Short- and long-term memory, including immediate recall.

(B) Ability to understand or communicate with others, either verbally or otherwise.

(C) Recognition of familiar objects and familiar persons.

(D) Ability to understand and appreciate quantities.

(E) Ability to reason using abstract concepts.

(F) Ability to plan, organize, and carry out actions in one's own rational self-interest.

(G) Ability to reason logically.

(3) Thought processes. Deficits in these functions may be demonstrated by the presence of the following:

(A) Severely disorganized thinking.

(B) Hallucinations.

(C) Delusions.

(D) Uncontrollable, repetitive, or intrusive thoughts.

(4) Ability to modulate mood and affect. Deficits in this ability may be demonstrated by the presence of a pervasive and persistent or recurrent state of euphoria, anger, anxiety, fear, panic, depression, hopelessness or despair, helplessness, apathy or indifference, that is inappropriate in degree to the individual's circumstances.

(b) A deficit in the mental functions listed above may be considered only if the deficit, by itself or in combination with one or more other mental function deficits, significantly impairs the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question.

(c) In determining whether a person suffers from a deficit in mental function so substantial that the person lacks the capacity to do a certain act, the court may take into consideration the frequency, severity, and duration of periods of impairment.

(d) The mere diagnosis of a mental or physical disorder shall not be sufficient in and of itself to support a determination that a person is of unsound mind or lacks the capacity to do a certain act.

(e) This part applies only to the evidence that is presented to, and the findings that are made by, a court determining the capacity of a person to do a certain act or make

12

a decision, including, but not limited to, making medical decisions. Nothing in this part shall affect the decisionmaking process set forth in Section 1418.8 of the Health and Safety Code, nor increase or decrease the burdens of documentation on, or potential liability of, health care providers who, outside the judicial context, determine the capacity of patients to make a medical decision.

§ 812.  Capacity to make decision

Except where otherwise provided by law, including, but not limited to, Section 813 and the statutory and decisional law of testamentary capacity, a person lacks the capacity to make a decision unless the person has the ability to communicate verbally, or by any other means, the decision, and to understand and appreciate, to the extent relevant, all of the following:

 (a) The rights, duties, and responsibilities created by, or affected by the decision.

 (b) The probable consequences for the decisionmaker and, where appropriate, the persons affected by the decision.

 (c) The significant risks, benefits, and reasonable alternatives involved in the decision.

The Due Process in Competence Determinations Act, Prob. Code, §§ 810 to 813, 1801, 1881, 3201, and 3204, offers a wide range of potential mental deficits that may support a determination that a person is of unsound mind or lacks the capacity to make a decision or do a certain act. *In re Marriage of Greenway*, 217 Cal. App. 4th 628, 640 (Cal. App. 4th Dist. 2013).

**<u>Conservatorship</u>**

In California, a party is incompetent if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case. *See* Cal. Prob. Code § 1801*;  In re Jessica G.*, 93 Cal. App. 4th 1180, 1186 (2001); *Elder-Evins v. Casey*, 2012 U.S. Dist. LEXIS 92467 (N.D. Cal. July 3, 2012).

Federal Rule of Civil Procedure 17 also provides that the court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). When a "substantial question exists regarding the mental competence of a party proceeding pro se," courts should "conduct a hearing to determine whether or not the party is competent, so that a representative may be appointed if needed." *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989); *see also Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005).

A guardian ad litem may be appointed for an incompetent adult only (1) if he or she consents

13

to the appointment or (2) upon notice and hearing. *Jessica G.*, 93 Cal. App. 4th. at 1187-88.

Cal Prob Code § 1801

> (a) A conservator of the person may be appointed for a person who is unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter, except as provided for the person as described in subdivision (b) or (c) of Section 1828.5.

> (b) A conservator of the estate may be appointed for a person who is substantially unable to manage his or her own financial resources or resist fraud or undue influence, except as provided for that person as described in subdivision (b) or (c) of Section 1828.5. Substantial inability may not be proved solely by isolated incidents of negligence or improvidence.

> (c) A conservator of the person and estate may be appointed for a person described in subdivisions (a) and (b).

> (d) A limited conservator of the person or of the estate, or both, may be appointed for a developmentally disabled adult. A limited conservatorship may be utilized only as necessary to promote and protect the well--being of the individual, shall be designed to encourage the development of maximum self--reliance and independence of the individual, and shall be ordered only to the extent necessitated by the individual's proven mental and adaptive limitations. The conservatee of the limited conservator shall not be presumed to be incompetent and shall retain all legal and civil rights except those which by court order have been designated as legal disabilities and have been specifically granted to the limited conservator. The intent of the Legislature, as expressed in Section 4501 of the Welfare and Institutions Code, that developmentally disabled citizens of this state receive services resulting in more independent, productive, and normal lives is the underlying mandate of this division in its application to adults alleged to be developmentally disabled.

> (e) The standard of proof for the appointment of a conservator pursuant to this section shall be clear and convincing evidence.

§ 1872. Effect of conservatorship on legal capacity of conservatee

> (a) Except as otherwise provided in this article, the appointment of a conservator of the estate is an adjudication that the conservatee lacks the legal capacity to enter into or make any transaction that binds or obligates the conservatorship estate.

> (b) Except as otherwise provided in the order of the court appointing a limited conservator, the appointment does not limit the legal capacity of the limited conservatee to enter into transactions or types of transactions.

§ 1873. Court order affecting legal capacity of conservatee

> (a) In the order appointing the conservator or upon a petition filed under Section 1874, the court may, by order, authorize the conservatee, subject to Section 1876, to enter into transactions or types of transactions as may be appropriate in the circumstances of the particular conservatee and conservatorship estate. The court, by order, may modify the legal capacity a conservatee would otherwise have under Section 1872 by broadening or restricting the power of the conservatee to enter into transactions or types of transactions as may be appropriate in the circumstances of the particular conservatee and conservatorship estate.

14

(b) In an order made under this section, the court may include limitations or conditions on the exercise of the authority granted to the conservatee as the court determines to be appropriate including, but not limited to, the following:

   (1) A requirement that for specific types of transactions or for all transactions authorized by the order, the conservatee obtain prior approval of the transaction by the court or conservator before exercising the authority granted by the order.

   (2) A provision that the conservator has the right to avoid any transaction made by the conservatee pursuant to the authority of the order if the transaction is not one into which a reasonably prudent person might enter.

(c) The court, in its discretion, may provide in the order that, unless extended by subsequent order of the court, the order or specific provisions of the order terminate at a time specified in the order.

(d) An order under this section continues in effect until the earliest of the following times:

   (1) The time specified in the order, if any.

   (2) The time the order is modified or revoked.

   (3) The time the conservatorship of the estate is terminated.

(e) An order under this section may be modified or revoked upon petition filed by the conservator, conservatee, the spouse or domestic partner of the conservatee, or any relative or friend of the conservatee, or any interested person. Notice of the hearing on the petition shall be given for the period and in the manner provided in Chapter 3 (commencing with Section 1460) of Part 1.

**Questions of Competency of Debtor**

The court observes that while Debtor discussed his skills, knowledge, legal experience, and ability to market and sell the Property, his conduct, both prior to and now after the October 29, 2019 hearing demonstrates otherwise. The court cannot tell if this is because he is legally incompetent; that he just stubbornly believes that he is right and everyone else is against him; or that a multi-party scheme to defraud exists and has rendered him unable to act to protect his rights or interests.

As the court discussed in the Civil Minutes for the hearing on the Motion to Withdraw as Counsel for Debtor, the defaults on the obligations to the two mortgage creditors are not new, but the ($35,591.34) pre-petition arrearage on the obligation owed to Citibank dates back to 2016 and the ($28,231.63) pre-petition arrearage on the Provident obligation dates back to February 2018.[3]

---

   [3] Citibank Proof of Claim No. 1-1 and Provident Proof of Claim No. 2-1.

Dckt. 127 at 2. A review of Debtor's Statement of Financial Affairs shows that he has for 2018, 2017, and 2016 had very limited income, stating under penalty of perjury that his total income for those three years consisted of:

> 2018 Income..........$18,912..........Social Security

> 2017 Income..........$17,912.........Social Security

> 2016 Income..........$18,912..........Social Security

Statement of Financial Affairs Questions 4 and 5, Dckt. 1 at 30-31.

It would appear "obvious" to a person of limited income who believes that there is substantial equity in the Property, that given the substantial defaults and inability to make the current monthly payments, much less cure the arrearage, that an orderly commercially reasonable sale of the Property is necessary. For the three years leading up to the Bankruptcy Case, Debtor did not achieve such a sale.

Though the court was convinced by the Debtor at the October 29, 2019 hearing that Debtor was "with it" and would be moving forward with his daughter to obtain counsel and protect their interests, such does not now appear to be the case. Rather, Debtor appears to be stuck with arguing the past, looking over his shoulder at hearings that have been concluded.

## CONCLUSION

Therefore, in light of what may be a legal incapacity by Debtor, the court requires the review, consultation, and conclusions of professionals in this area - Sacramento County Adult Protective Services. Before the court allows what appears to be Debtor's financially self-destructive rearview-looking continuing pattern of conduct to result in the loss of what value may exist for Debtor and Debtor's daughter, the court will have the benefit of and direction of Sacramento County Adult Protective Services.

Therefore, the court determines that as provided in Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 "other reasons that justifies relief" from the prior order modifying the automatic stay exists, and:

1. The court shall issue an order pursuant to this Ruling vacating that portion of the order modifying the automatic stay, Dckt. 94, and only that portion of the order that allows Provident or

any other person under any other deed of trust recorded against the property to conduct a non-judicial foreclosure sale.

2. The modification of the stay for all other purposes, including noticing any new and continuing any existing non-judicial foreclosure sale dates, remains in full force and effect.

3. The court sets a hearing on the Motion for Relief and the granting of relief to conduct the foreclosure sale for 1:30 p.m on November 26, 2019, to be conducted in conjunction with the initial hearing on the timing of the investigation and report of the Sacramento County Adult Protective Services concerning the legal competency of Debtor.

While this will cause further delay for Provident, in light of the sales price in the contract that the Limited Scope Representative presented to the court (which Debtor opposed as unreasonably low and part of the conspiracy to defraud), Provident's claim being secured by the senior deed of trust on the Property, Provident's own secured claim, and Provident's Motion for Relief, there is substantial value in the Property to cover any additional costs, expenses, and fees arising from delays in the foreclosure sale.

In making this Ruling, the court makes it clear in this record that there is nothing that Provident or its attorneys did which in any way the court deems improper or the "cause" of this modification. Provident and its experience bankruptcy counsel appear to have worked in good faith with Debtor's counsel to afford Debtor the opportunity to sell the Property, pay Provident and the other two creditors with secured claims (including the Debtor's daughter), and for Debtor to pocket the value in excess of the secured claims.

This Memorandum constitutes the court's findings of fact and conclusions of law. The court shall issue a separate order.

**Dated:** November 08, 2019          **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

17

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Nichole L. Glowin, Esq.<br>Attorney of Record for Provident Funding Associates, L.P.<br>4665 MacArthur Ct #200<br>Newport Beach CA 92660 | Ms. Jamie Ivers<br>1745 Bellagio Street<br>Chula Vista, CA 91913 |
| Provident Funding Associates, L.P.<br>Attn: Nichole L. Glowin, Esq.<br>c/o Wright, Finlay & Zak, LLP<br>4665 MacArthur Court #200<br>Newport Beach CA 92660 | Robert P. Zahradka, Esq.<br>Attorney of Record for Citibank, N.A.<br>Tiffany & Bosco, P.A.<br>1455 Frazee Road, Suite 820<br>San Diego CA 92108 |
| Robert P. Zahradka, Esq.<br>Attorney of Record for Citibank, N.A.<br>Tiffany & Bosco, P.A.<br>1230 Columbia Street, Suite 680<br>San Diego CA 92101 | |